IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

# 09CV01723

JUL 2 1 2009

Civil Action No. _____

GREGORY C. LANGHAM
CLERK

Paula Nelson

v.

| | |
|---|---|
| Jeffrey Skehan | Lafayette Police Officers John Does 3-8 |
| Connie Trout | Lafayette Police Officer Keith Chagnon |
| David G. Skehan | Lafayette Municipal Court |
| John Doe #1, | Lafayette Municipal Judge Roger Buchholz |
| Boulder County Drug Task Force | City Prosecutor Ralph Josephson |
| Lafayette Police Department | The City of Lafayette |
| Lafayette Police Chief Paul Schultz | Gary Klaphake, City Administrator |
| Detective Nathan Vasquez | The City Council of  Lafayette |
| John Doe #2 | |
| Lafayette Police Officer Johnson | |
| Lafayette Police Detective Gary Thatcher | |

---

# COMPLAINT AND JURY DEMAND

---

## JURISDICTION

The Plaintiff, Paula Nelson,  comes before the court  pro se in defense of her right to equal
protection under the law and  due process under the Fourteenth Amendment to the Constitution
of  the United States.    Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(a)(3) and 42 U.S.C.
§ 1983 and the Americans with Disabilities act. These rights were violated by the City of Lafayette
and its employees.


Additionally the Plaintiff  claims violations of federal conspiracy statutes, interstate transportation
of stolen goods,.  Pendant jurisdiction over claims of state law and tort is proper under  28 U.S.C.
§ 1367(a).


The Plaintiff has exhausted all state and local remedies to the best of her knowledge and ability.

1

## STATEMENT OF FACTS

(1)     On knowledge and belief the Plaintiff does state that in June and July of 2007 the Defendants Jeffrey Skehan and Connie Trout did conspire together, and convert to their own use property belonging to the Plaintiff,  namely business inventory in the form of sterling and gold filled jewelry , business equipment and furnishings, and tools.   The retail value of this merchandise exceeds $40,000.   Colorado and Florida Statutes both provide for triple damages in matters of Civil Theft.   Jeffrey Skehan did on several occasions state that John Doe #1,  a vagrant and an acquaintance of Jeffrey Skehan  was also involved but the Plaintiff has no personal knowledge of his involvement.

(2)     On or about July 9, 2007  at 104 East Simpson in Lafayette, Colorado  Jeffrey Skehan and Connie Trout did physically  restrain, assault and batter the Plaintiff.   She was forced to to sign off on the title  of a motor vehicle owned jointly with Jeffrey Skehan in which she had just invested several thousand dollars.   That wasn't enough for them,  while still under physical restraint  they threatened to leave all of my merchandise there so it would get tossed out on the street.   Connie kept insisting that I was taking advantage of Jeff and demanding merchandise.   I pointed out  that he didn't even know what it was or how much to sell it for, that that would be just plain foolish. They continued to yell at me and keep me from even standing up or moving from where I was.   Finally,  I scrawled a note that said he could have "every fucking thing I fucking owned."  Connie witnessed it and they seemed satisfied.   I was then permitted to leave.  I went home and collapsed.   In the morning Jeff acted as though nothing had happened.

(3)     This alleged contract was later presented to and accepted by the Lafayette Police Department as evidence of valid title in spite of the fact that the Plaintiff s aid it was written under duress,  lacked several elements of a binding contract, and was written in a large scrawling hand and included obscenities.   The alleged contract was one that no reasonable person would accept as valid.

2

(4)     During that time Jeffrey Skehan and David G. Skehan did on multiple occasions confer by phone with each other about the stolen merchandise. David G. Skehan, by failing to warn the Plaintiff about the on going theft did become a conspirator in said theft.

(5)     Officer Johnson responded to my original complaint of theft made on the morning of July 13, 2007.  He was not alert and apparently not fully aware of his surroundings.   He incorrectly cited the street name as Chester not Cleveland in his report each time he referred to the location. Jeffrey Skehan and I jointly accused Connie Trout of theft and I went back in the house to work.  Less than an hour later I went to the Simpson Location and found officer Johnson still there.  I was informed by him that the alleged contract had been produced and it was Jeff's property , not mine and if I didn't back down he would arrest me for false reporting.  I refused to back down.

(6)     Officer Johnson did not seem to remember or care that Jeffrey Skehan had originally reported that Connie Trout had stolen my property too.  Officer Johnson then ordered me to leave the premises at Simpson Street and go to my home on Cleveland.  At that time he was visibly upset and seemed about to lose control so I left.  According to the police report he called for assistance and a supervisor and several Officers showed up at my home on Cleveland Street.  I again attempted to explain that the contract was extorted and signed under duress, but none them would listen.

(7)     The Plaintiff believes that Under color of law and in excess of their authority some person, herein referred to as John Doe #2, a member of the Lafayette Police Department and/or the Boulder County Drug Task Force did illegally give possession of my property to Jeffrey Skehan, Connie Trout, and John Doe #1.  This person officially authorized the violation of my right to property and abrogated my right to due process under the 14th amendment. This person permitted Jeffrey Skehan and John Doe #1 to leave the state with the stolen property in spite of the fact that doing so was in violation of the terms of Skehan's probation and his obligation to register as a sex offender.

3

(8)     Events surrounding this incident and statements made by Jeffrey Skehan and Connie Trout lead the Plaintiff to believe they likely had a connection with the Lafayette Police Department or the Boulder County Drug Task Force relating to  Federal Case **07-cr-00403-MSK USA v. Caekaert et al.** and used this relationship with law enforcement to cloak their own illegal actions with color of law.  Jeffrey Skehan had been arrested by Detective Nathan Vasquez , the lead investigator in this case.  These outrageous actions by members of the Lafayette Police Force occurred just as the investigation in the above case was approaching a conclusion.   The Plaintiff believes this may explain the collusion of the Lafayette Police Department with the perpetrators of the theft.

(9)     John Does #3-8 , unidentified members of the Lafayette Police Department offered to enter my home when they were off duty and seize additional property.  This is per information given to District Court # 20 of the State of Colorado by Jeffrey Skehan.

(10)    The Plaintiff continued to urge Detective Thatcher to investigate and press charges for theft.  He refused to do so.  I requested an interview with the District Attorney so I could speak directly to him on this matter and was told I could not.  The exploitation of the Plaintiff in this situation, along with the loss of substantial property and the deprivation of constitutionally protected rights by the Lafayette Police Department caused me to have a psychiatric breakdown.  II was hospitalized for a week in early September of that year. This hospitalization and breakdown was the proximate cause of the foreclosure upon my home of 20 years.

(11)    I contacted  Detective Thatcher immediately upon my release from the hospital.  I was informed that they still intended to do nothing and civil suit was my only option.  He told me that he had been informed by  David G. Skehan that I was stalking Jeff's sister and that it was my plain to commit insurance fraud because the property in question was not as valuable as I claimed.  So instead of being able to trust the Police of the City of Lafayette to defend my person and my rights I was being threatened with prosecution for a crime.

(12)   Detective Thatcher was in regular contact with David G. Skehan. It is an established fact that Mr. Skehan did aid and abet the interstate transportation of the stolen merchandise by giving his son the funds to get to his home in the state of Florida. Jeffrey Skehan told me on two specific occasions that when he arrived in Florida his father took my property and sold the Motor Home. He he stated that his father "always did this" whenever he had anything of value and recounted an earlier incident where his father took a valuable antique he had found and refused to give it back to him. He told me the same thing and told the same story in the spring of 2008 when he called from a homeless shelter in Florida, wanting to come back to Colorado. The Police Department has digital photographs of the stolen property e-mailed to them while it was in the possession of David G. Skehan.

(13)   The assault on my rights resumed in November of 2007 when I was involved in a minor traffic incident in Lafayette. Officer Keith Chagnon arrived on the scene with a presumption of guilt. He immediately quoted my statement back to me incorrectly and when I objected I was threatened with arrest. I was cited for failure to yield the right of way.

(14)   The report of Officer Chagnon was deficient according to the statutory requirements of the State of Colorado. The Plaintiff believes that investigation would have shown that the other party negligently or intentionally rode in front of the Plaintiff's vehicle. The other party was so abusive that the Plaintiff called in a second time to dispatch and asked the Officers to hurry, but only the behavior of the Plaintiff was mentioned in court.

(15)   The Plaintiff told Judge Roger Buchholz at the arraignment that she did not believe she could adequately defend herself at trial because of a neurological condition. She was assured by the judge that it would not be a big deal, was told that she did not need an attorney, and promised that the written argument she brought to the arraignment would be fairly considered at trial. It was not.

(16)     Officer Chagnon admitted under oath that he did not ask where the accident occurred, but

the court accepted his hearsay testimony.    I objected when he brought up the fact that

the I yelled "shut up" at the other party because it had nothing to do with the accident.

Again Officer Chagnon failed to mention  the barrage of abuse coming from the other party.


(17)     I was  unable to follow the proceedings completely because I could not hear the testimony

or the judge clearly.   I could not concentrate and had to guess at what was going on.   I

was clearly unable to defend myself.   At one point I was remonstrated for getting too close

to the Officer in order to hear what he was saying.   "You can hear", said the judge.


(18)     Judge Buchholz's behavior was clearly prejudiced toward  the prosecution. He terminated

my cross examinations before I was done and the Prosecuting Attorney was allowed to

lead, direct and correct the testimony of  the bicyclist. As a result his  testimony that was

self-contradictory and incoherent.   I gave sworn testimony which was identical to what was

in the written argument I had given to the judge and the Prosecuting Attorney at the

arraignment.    My  testimony conformed to the  physical facts of  the case but the

Prosecution was then permitted to speculate a defect of memory my part  when there was

no evidence of the same.   I protested that my neurological condition was relevant to my

ability to defend myself but not to the incident because I was not upset at the time the

accident occurred.   I was forced to give testimony about my disability that was enlarged by

the Prosecution and used as an excuse to dismiss my sworn testimony in favor of the

hearsay of the Officer and the prompted testimony of the bicyclist.   In short, it was

arranged that I should appear to incriminate myself.


(19)     During the trial I my mental state deteriorated to the point  that I was inconsolable and

distraught at the end.    My rights had been trampled once more by the City of Lafayette

and I felt humiliated and betrayed.   My extreme reaction  was a neurological reaction to

stress which is the result of physical injury to the brain.   It is not under my  voluntary control.


6

(20)    I was charged with not yielding the right of way to an unlighted bicycle.   I proved that I could not have hit him in the sidewalk, that it had to be in the roadway.   Colorado Revised Statutes 42 -4-1708 (3) states "the  burden of proof shall be upon the people, and the traffic magistrate shall enter judgment in favor of the Defendant unless the people prove the liability of the Defendant beyond a reasonable doubt" .

(21)    In announcing his findings the judge admitted that I had raised a valid issue but  then dismissed my sworn testimony and ignored the photographic evidence I presented and ruled against me.   By not holding to the standard of proof  required by law and allowing multiple violations of constitutional right and procedural irregularities  Judge Roger Buchholz did deprive the Plaintiff of property and rights without due process of law.

(22)    When I went in to see the record and consider an appeal  I was given a copy of  a Municipal Order dated the 30th of March 2007  which requires a cost bond of $200 to $400 plus payment in full for all fines and court costs before the court will complete the record on appeal.   There was no provision for those who can not pay those costs, or for those who believe the record can be completed with a partial transcript.   This order is unconstitutional, but it is apparently the official policy of the Municipal Court of the City of Lafayette.

(23)    I was not given a JDF 205 when I said I could not pay for the transcript on appeal.   This form contains the standard indigency requirements and is mandated by Colorado CJD 98-01 in this sort of case.   The form I was given did not ask for the data that is required by the JDF 205.   Judge Buchholz denied my indigent status, but shortly thereafter two different District Judges granted permission to file without payment.   Judge Buchholz apparently applied a standard other than that which is mandated by CJD 98-01.

(24)    I requested access to the record of the arraignment and trial less than a week after the trial. I was not given access to it until seven months after the trial.   C.A.R. 10(b) states that the appellant can order a partial Record on Appeal.   Since I could not even hear the recording of the trial I could not designate a partial record or frame an argument for my appeal.

(25)    On October 26,2008 I sent an email to all administrative city employees listed  listed on the city web site and to all city council members.  This email clearly advised them of the activities of the court that I believed were illegal.   I informed them  Judge Roger Buchholz was administering the court in violation of Federal and State Constitutional right , state statutes, and directives of the Chief Justice. This communication was ignored.    The City of Lafayette did not act to properly supervise the Municipal Court  and refused to protect the rights of the Plaintiff when asked to do so.   This did further establish a pattern and practice of denying the Civil Rights of the Plaintiff.

(26)    Plaintiff believes she sustained injury from the willful and wanton conduct of Officers Johnson and Chagnon,  Judge Buchholz and all of those administrators, functionaries and elected officials of the City of Lafayette who did through their established patterns and practices of discriminatory indifference,  failed to protect the Plaintiff's right to due process and prosecute those who committed theft, slander, assault, battery, kidnapping in the first case  and attempted extortion by a bicyclist who rode in front of her car and caused his own injury in the second case.

(27)    The Plaintiff  suffers from Traumatic Brain Injury and reacts to stress in an extreme manner because of a  neurological defect.   The Plaintiff has no criminal record,  does not strike or harm anyone when upset, she simply becomes angry, screams, and can not calm down. The Plaintiff was subjected to a pattern of discrimination and denial of rights  because of her disability and her sex.   The City of Lafayette has a history of prejudicial enforcement and violation of civil rights.  It has a reputation for unprofessional conduct so that more ethical Officers choose not to be employed there.

8

## Parties to the case.

Plaintiff Paula Nelson is a citizen of Colorado who presently resides at
338 Chinook Avenue in Longmont, Colorado.

### Defendants:

JOHN DOES 1 through 8 are sued by fictitious names, as Plaintiff is presently unaware of the true
names of these Defendants.

The following parties are being sued as individuals, jointly and severally liable for conspiracy to
deprive the Plaintiff of Constitutional rights, theft, conspiracy to commit theft, and for transporta-
tion of stolen goods across state lines. Other separate torts may be specified in the complaint.

Jeffrey C. Skehan who presently resides at
590 Mulpus Road, Lunenburg, MA 01462

Connie Trout who presently resides at
1670 South Cherryvale Road, Boulder, CO 80303

David G. Skehan who presently resides at
1922 SE 40th Street, Cape Coral, FL. 33904-50440

John Doe #1 - a vagrant known to the Lafayette Police Department
at the time of the incident.

The following parties are being sued in their individual and official capacities:

The Boulder County Drug Task Force

The Lafayette Police Department

Lafayette Police Chief Paul Schultz

John Doe #2     - a supervisor of the Lafayette Police Force
or Boulder County Drug Task Force

Lafayette Police Officer Johnson

Lafayette Police Detective Nathan Vasquez

Lafayette Police Detective Gary Thatcher

Lafayette Police Officer Keith Chagnon

John Does 3-8     - Officers of the Lafayette Police Force

Lafayette Municipal Judge Roger Buchholz

City Prosecutor Ralph Josephson

The City of Lafayette

Dave Williamson, City Attorney

Gary Klaphake, City Administrator Lafayette

The City Council of Lafayette

### Cause of action #1

All of the defendants named in this action did participate in a conspiracy to deprive the Plaintiff of her rights as defined in *42 U.S.C. § 1985*. These rights are provided for in the Fourth and the Fourteenth Amendment to the Constitution and *42 U.S.C. § 1981* and *42 U.S.C. § 1982*. Further, these rights were denied under color of law as defined in *42 U.S.C. § 1983* and the Plaintiff is entitled to actual and putative damages.

Action based on color of law is valid against the individuals Jeffrey Skehan, Connie Trout, and David G. Skehan because the actions of the Police Department of the City of Lafayette provided protection under color of law for their illegal activities and because they did conspire together to avail themselves of that protection. They may be " deemed to act with the authority of the government and, as a result, be subject to constitutional restraints." *Edmonson v. Leesville Concrete Co.* 500 U.S. 614, 610 (1991). Paragraphs 1-12 are incorporated by reference.

### Cause of action #2

Jeffrey Skehan and Connie Trout did steal over $40,000 retail value in goods from my place of business. Under the Civil Theft provision of Colorado law the Plaintiff is entitled to three times the value of the amount stolen. The plaintiff reserves the right to adjust the amount pending the results of discovery.

### Cause of action #3

Jeffrey Skehan did violate federal statutes *§ 2312. Transportation of stolen vehicles* and *§ 2314. Transportation of stolen goods, securities, moneys..... of the value of $5,000 or more..* Paragraphs 1,2,4 and 12 are incorporated by reference.

### Cause of action #4

David G. Skehan did violate federal statutes *18 U.S.C. § 2313. Sale or receipt of stolen vehicles* and *18 U.S.C. § 2315. Sale or receipt of stolen goods, securities, moneys... of the value of $5,000 or more.*. Paragraphs 1,2,4 and 12 are incorporated by reference.

### Cause of action #5

Connie Trout did violate *19 U.S.C. § 373.* Solicitation to commit a crime of violence. It is my recollection that Connie Trout did originate and prolong the assault on my person referred to in paragraph 2. Jeffrey Skehan has been diagnosed Severely Mentally Ill and has a mental state and disability that makes him overly susceptible to the influence of others. I believe she exploited this disability in order to cover thefts that she committed bring him into a plan and actions that he would not have formed on his own.

### Cause of action #6

U.S.C. 42 § 1986. Action for neglect to prevent establishes personal liability on the part of David G. Skehan for the actions of his son and Connie Trout when they stole my property. David G. Skehan did inform me on the 13th of July , 2007 that he had prior knowledge that his son and Connie Trout were stealing. He told me "I told him it wasn't his to take and to put it back" but he did not inform me of this activity until after his son had fled the state with my property. The law reads as follows: *"Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; "* Further, the plaintiff reserves this cause of action to be used against John Doe #1, any police officer , or any other person who upon discovery is proven to have knowledge of the crime and who failed to take action to prevent its commission.

### Cause of action #7

U.S.C. 42 § 1988. Proceedings in vindication of civil rights - The plaintiff has the right under this statute to add a state cause of action if federal statutes  " are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held".

### Cause of action #8

David G. Skehan is liable for actual and actual and punitive damages for gross negligence, slander per se , intentional infliction of emotional distress and  civil theft,    His conduct in this matter was outrageous, intentional, and reckless and the Plaintiff is entitled to triple damages under Florida statute 772.104  Civil cause of action.

### Cause of action #9

John Doe #2 did make an illegal decision which was outside the scope of his authority when he determined that the contract referenced in paragraph two of this complaint was legally binding upon the Plaintiff and grounds to deprive her of her property.   this illegal action deprives him of immunity from prosecution under  42 U.S.C. § 1983.  The statement of the Plaintiff that the contract was obtained under duress and the nature of the contract itself  should have at the very least caused him to impound the property in question pending investigation and judicial review.

### Cause of action #10

Officer Johnson was not fit for duty.  For a Police officer in a small town to be unaware of what street he is on shows impairment.  Further, Officer Johnson  was incapable of adopting a professional demeanor  when the Plaintiff apologized and explained that her yelling and apparently outrageous behavior was the result of a neurological condition.   Officer Johnson  appeared to the Plaintiff to be responding to some personal trauma not related to the situation at hand.   Plaintiff alleges that Officer Johnson may be generally unfit for duty as a law enforcement officer or be in need of personal mental health care.    The Plaintiff does have professional training in this area.

### Cause of action #11

Lafayette Police Chief Paul Schultz is responsible for the actions and the fitness for duty of those under his command. The Police Department of the City of Lafayette has a culture of abuse which is discoverable and a reputation that is so negative that ethical law enforcement officers who do not wish to be a part of that culture seek employment elsewhere. His failure to maintain an orderly department and control over his officers as a direct cause to the material and emotional harm alleged in this complaint and to the violations of Civil Right alleged herein.

### Cause of action #12

The Plaintiff believes it is likely Lafayette Police Detective Nathan Vasquez and the Boulder County Drug Task Force took advantage of the mental impairment of Jeffrey Skehan and forced him to assist in the operation referenced in paragraph eight of this complaint. His mental impairment is severe and should be obvious to a trained professioinal. If this is proven upon discovery they were in violation of C.R.S. § 18-6.5-103, Crimes Against At-Risk Adults.

### Cause of action #13

Lafayette Police Detective Gary Thatcher did fail to properly investigate a the crime of theft as reported to him. He also participated in the conspiracy to defraud the Plaintiff of her rights by repeatedly refusing to acknowledge the invalid nature of the contract described in paragraph two of this complaint. This should have triggered impoundment and judicial review as alleged in complaint # 10.

### Cause of action #14

John Does 3-8 - Officers of the Lafayette Police Force. These un-named officers did witness, condone, and participate in the violation of the Plaintiff's civil rights. By not objecting to this they are responsible for cultivating and maintaining the culture of abuse alleged in cause of action #12.

### Cause of action #15

Malicious prosecution in the matter of the traffic offense of November 2007 -

a)    The summons issued to the defendant was made absent the investigation required under C.R.S. 42-4-1606 and was therefore illegally issued.

b)    The defendant made a motion to dismiss which did not allege allege any disputable facts at the beginning of her trial for failure to yield. It had the obligation to grant that motion and dismiss the action.

c)    The court was also required to recognized it's own decision that the bicyclist involved was found guilty of not taking the steps required by law to make his vehicle visible to others.  This action on the part of the bicyclist made it impossible for the prosecution to prove actus reus or mens rea and establish a prima facie case.

d)    Absent a prima facie case , the city attorney should not have brought this case to trial and when the defendant made motion to dismiss it should have been granted.

e)    The Municipal Court refused to correct its own error when it denied the Plaintiff's Motion for Judgement Not Withstanding the Verdict filed in December of 2007.

The Plaintiff states that this malicious prosecution was conducted with the intent to single the Plaintiff out for harassment and was part of a pattern that did deny the Plaintff her rights under the Fourth and the Fourteenth amendments. *Norton v. Liddel, 620 F.2d 1375 (10th Cir. 1980), Beker Phosphate Corporation v. Muirhead, 581 F.2d 1187 (5th Cir. 1978).*

### Cause of action #16

Failure by the The City of Lafayette, Dave Williamson, Gary Klaphake , City Council of Lafayette to properly monitor the operation of the court when informed of the illegal operation of the Court on state and federal grounds.   Paragraphs 13-27 incorporated by reference.

### Cause of action #17

Lafayette Municipal Judge Roger Buchholz and City Prosecutor Ralph Josephson bear personal responsibility for the deprivation of right alleged herein.  42 U.S.C. § 1983 is the civil equivalent to 18 U.S.C. § 242.   "Judges who would willfully discriminate…would willfully deprive a citizen of his constitutional rights, as this complaint alleges, must take account of 18 U.S.C. 242."   See

Greenwood v. Peacock supra at 384 U.S. 830; United States v. Price 383 U.S. 787, 383 U.S. 793-794 (1966); United States v. Guest 383 U.S. 745, 383 U.S. 753-754 (1966); Screws v. United States, 325 U.S.

The prosecutorial misconduct  in leading the witness, Mr. May, to make false and contradictory statements under oath  is actionable under  42 U.S.C. § 1983.   *Bretz v. Kelman, 773 F.2d 1026, 1985 U.S. App. LEXIS 23482 (9th Cir. 1985)(en banc), in which a unanimous 9th Circuit upheld a Section 1983 civil rights claim for similar prosecutorial misconduct (alleged perjury, threatening and coercing witnesses, concealing and falsifying evidence), citing Parratt v. Taylor, 451 U.S. 527, 68 L. Ed. 420, 101 S. Ct. 1908 (1981)*

### Cause of action #18

The acoustics in the Municipal Court of the City of Lafayette are defective and such that someone with a moderate loss of hearing  which does not normally pose a disadvantage can not attend to the proceedings.   This did interfere with the Plaintiff's ability to defend herself in that court and further deprives a large class of citizens who are similarly disabled of their rights under the Fourth and the Fourteenth amendments of the Constitution.

### Cause of action #19

The Municipal Order referenced in paragraph 22 of this complaint is unconstitutional and therefore void.

### Cause of action #20

Officer Keith Chagnon did proceed against the Plaintiff with malice and intent to deprive her of her right to free speech.  He did threaten the Plaintiff with imprisonment and commit false arrest by confining her to her car when she demanded that he take note of the fact that she did not strike the bicyclist  on the sidewalk where he had the legal right of way, but in the street as she was attempting to enter traffic.   He falsified his report when he failed to make note of this specific protest  which was made before he wrote the citation.   He failed in his duty to the people of Lafayette when he declined to investigate what could have been an attempt at  insurance fraud and extortion on the part of the bicyclist who rode in front of her vehicle.

### Claims for relief -

Generally, the plaintiff requests relief in the form of all actual and putative damages and such legal costs as may be incurred as allowed under Title 42 U.S.C.

### Claim for Relief Against
### Jeffrey Skehan, Connie Trout, and David G. Skehan

The Plaintiff requests that Jeffrey Skehan, Connie Trout, and David G. Skehan be found jointly and severally liable for the tortious actions alleged herein. The Plaintiff is entitled to triple damages under both Florida and Colorado Law. The exact amount of stolen inventory is unknown. The Plaintiff believes she may come to a more precise figure after discovery, but clearly states that the amount $40,00C in retail value and that amount is subject to upward revision based on the market price of silver.

The Plaintiff is to date still reconstructing her business and undergoing medical care and taking stress reducing medication that was not needed before this trauma. At the time of the July incident the Plaintiff was still generating an income adequate to pay for the mortgage on 109 East Cleveland, living expenses for Jeff and herself, and child support for his daughter. Since that time she has been unable to pay rent owed to her sister for the home she lives in and is $2700 in arrears to Public Service.

The foreclosure and the additional disruption to the business has meant that the Plaintiff is still unable to earn a regular income. Her family continues to bear the cost of the mortgage on a home they purchased for her, utility bills, and medical expenses Since the Plaintiff was handling these expenses before her hospitalization, and was unable to do so thereafter, she is asking for reimbursement of medical expenses and a sum of $1500 per month to cover rent, utilities and insurance retroactive to the date she was evicted from her home of twenty years. Additionally the Plaintiff would like this amount carried forward for a period of one year after this case is settled so that she may concentrate on the therapies she needs to be restored to the mental , emotional, and financial state in which these defendants found her.

## Claim for Relief against the City of Lafayette and
## Its Employees and Departments

Due to the general lack of oversight by the elected officials and administrative officials and the patterns and practices of the City of Lafayette the Plaintiff requests the following relief:

- Putative and actual damages computed at a rate of five thousand dollars for each city employee involved in the active violation of the Plaintiff's rights under 42 U.S.C. § 1983.

- Putative and actual damages computed at a rate of five thousand dollars for each city employee who did not address the Plaintiff's request that the city itself address the violations of state and federal law and judicial procedure that were brought to their attention.

- An independent review of the psychiatric condition of all officers and administrators currently employed by the Lafayette Police Department. This review should be sufficient to guarantee the rights and safety of the citizens of Lafayette and those who may enter into that jurisdiction unaware of the current patterns of abuse.

- An immediate and comprehensive review of the psychiatric and emotional fitness for duty of Officer Johnson so that he may be removed if he is a danger to the rights and safety of the citizens of Lafayette and others.

- An ongoing program of formal oversight by some independent entity that will guard against such future violation of Civil Rights for a period of two years

## Claim for Relief against the Boulder County Drug Task Force and Detective Nathan Vasquez

If it is found that they did aggravate the psychiatric condition of Jeffrey Skehan by coercing him to assist in an undercover operation the Plaintiff requests that the court make a monetary award of $50,000 to the Plaintiff to be placed in trust to pay for future psychiatric and medical care that will repair the damage done by this exploitation.

Further, the Plaintiff proposes that a similar offer should be made to Jeffrey Skehan for the purpose of his personal care and that of his daughter, the minor child Angel Lynn Skehan.

## Claim for Relief against the Municipal Court of the City of Lafayette, Judge Roger Buchholz and Prosecutor Ralph Josephson

The Plaintiff demands that the Motion to Reconsider tendered to the Municipal Court in December of 2008 be granted and all charges dropped.   Putative damages in the amount of $15,000 should be awarded to the plaintiff for the time she spent fighting this malicious and illegal prosecution. Because of her neurological impairment the research was much more difficult and time consuming than it would have been if she had been unimpaired.    The fight for her rights also created a great deal of stress that she should not have had to endure.  The Plaintiff also requests the following:

The Plaintiff also believes that the acoustics and/or sound system must be corrected in the courtroom and auditory assistance should be made available on demand for all who find it necessary.

The Plaintiff also requests that the court be brought into compliance on all matters of law and judicial procedure and that this be confirmed by an independent audit.

The Plaintiff believes that Lafayette Municipal Judge Roger Buchholz and City Prosecutor Ralph Josephson should be sanctioned for their behavior in this case. A public acknowledgement of the illegal and unenforceable nature of the Municipal Ordinance and referred to in paragraph 22 of this complaint should be made. All persons who were convicted by this court since that ordinance was put in place should be apprised of its illegal nature and the statute of limitations should be tolled for them so that they might appeal if they feel their conviction was unjust.

complaint should be made. All persons who were convicted by this court since that ordinance was put in place should be apprised of its illegal nature and the statute of limitations should be tolled for them so that they might appeal if they feel their conviction was unjust.

**JURY DEMAND:** I hereby request that this matter be tried by jury.

Paula Nelson, appearing pro se
338 Chinook Avenue
Longmont, CO 80501

720-334-2468

Paula@colorado-online.biz

Date: 7/13/09

_____
(Plaintiff's Original Signature)

Subscribed and sworn to before me this _____ day of _____, 20___

_____
(Notary Public)

_____
(Address)

My commission expires:_____

19